

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7453 | **DATE** | 3/15/2000 |
| **CASE TITLE** | In Re: In Re: Sears Retiree Group Life Ins | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum and Order. Both parties have moved for summary judgment with respect to two counts previously certified for class treatment. We grant Sears' motion for summary judgment and deny plaintiffs' similar cross motion. Status hearing set for April 3, 2000 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | MAR 17 2000 | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | 118 |
| WAH | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: SEARS RETIREE GROUP LIFE   )
INSURANCE LITIGATION.  THIS   )   No. 97 C 7453
DOCUMENT RELATES TO ALL ACTIONS   )



## MEMORANDUM AND ORDER

In this class action plaintiffs allege that defendants Sears Group Life Insurance Plan (the Plan) and Sears, Roebuck and Company (the Company) (collectively Sears) modified retiree life insurance benefits in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Both parties have moved for summary judgment with respect to two counts previously certified for class treatment. For the reasons set forth below, we grant Sears' motion for summary judgment and deny plaintiffs' similar cross motion.

## BACKGROUND

In 1997, Sears decided to amend the Plan by reducing life insurance benefits for some of its retired former employees. Prior to this change the Plan provided that employees who retired on or after reaching age 60 would receive continuing life insurance coverage, to the extent of 40% of prior coverage and at a maximum of $100,000, so long as they had paid policy premiums for ten continuous years when employed at Sears. Effective January 1, 1998, Sears amended the Plan to provide a ten-year phase-out of coverage in excess of $5,000 for post-1977 retirees. Not surprisingly, Sears' decision to amend the Plan triggered a number of lawsuits, which are now consolidated in this action. The Second Consolidated Complaint is brought pursuant to 29 U.S.C. § 1132(a) and alleges six causes of action. In a prior order we certified Counts I and II – claims for "Plan Enforcement" and "Breach of Contract" – for class treatment. *See* In re Sears Retiree Group Life Litig., 1999 WL 35312 (N.D. Ill. Jan.11, 1999).

Both parties now seek summary judgment with respect to these two counts.

The heart of the dispute is whether Sears has the right to reduce the life insurance benefits it provides to its retirees. Sears argues that it has reserved the right to do so under the Plan. Plaintiffs riposte that they have contracted for lifetime benefits and that Sears' decision to reduce their life insurance amounts to a breach of the Plan and, consequently, a violation of ERISA. Both parties find support for their respective positions in the language of the applicable Plan documents,[1] and that is where we will begin.

Since the enactment of ERISA, Sears has outlined its benefits package for employees and retirees in a Summary Plan Description (SPD). With respect to the retiree life insurance benefits at issue in this lawsuit, the January 1, 1976 SPD states:

> If you retire in accordance with Company policy on or after reaching age 60, you will continue in the Life Insurance portion of the Plan without further cost to you, provided you have been a member of the Plan for ten continuous years at the time of your retirement.

(Sears Exh. 1). All subsequent SPDs issued by Sears contain similar language (*see* Sears Exhs. 2-8). Plaintiffs seize upon this language, particularly the phrase "without further cost to you," to argue that Sears promised qualifying retirees lifelong insurance benefits that vested upon retirement.

Sears emphasizes that the SPD also contains two reservation of rights clauses, one specific and the other general. The specific reservation of rights clause applies only to retiree life insurance benefits and states:

> Insurance after retirement will be continued only while the Group Life

---

[1]The Plan documents consist of the group life insurance policy, application for insurance, certificate of insurance, and subsequent amendments to the policy (collectively "the Policy"), as well as the SPD (Pl. 12(M) at ¶ 6; Sears 12(M) Resp. at ¶ 6).

Insurance Plan is in effect and unchanged with respect to retired regular employees.

(Sears Exh. 1). The general reservation of rights clause appears at the end of the SPD and is applicable to all of the Plan's benefits:

Although Sears expects and intends to continue the Group Life Insurance Plan indefinitely, the Company reserves the right to modify, amend, suspend, or terminate it at any time.

(Sears Exh. 2). The specific and general reservation of rights clauses first appeared in the 1976 and 1978 SPDs, respectively, and appear in substantially the same form in all subsequent SPDs.

Reservation of rights clauses also appear in the language of the Policy. The Policy contains a section directly addressing retirees, entitled "Your Benefit Plan For Retired and Disabled Associates" (Pl. Exh. J). We will refer to this part of the Policy as the "Retiree Section." In the Retiree Section – under the caption "Future of the Plan" – the Policy states:

It is hoped that This Plan will be continued indefinitely, but [the Company] reserves the right to change or terminate This Plan in the future.

(Pl. Exh. J). Earlier in the Retiree section – under the caption "When Benefits End" – the Policy states:

All of your benefits will end on the date This Plan is changed to end insurance for Retired and Disabled Associates ... If This Plan or the Group Policy ends in whole or in part, your benefits which are affected will end.

(Pl. Exh. J). Prior versions of the Policy contained similar language.[2] Finally, elsewhere in the

---

[2]The Policy in effect at the time Sears reduced retiree benefits was adopted on April 22, 1996 and had two prior versions. The January 1, 1989 version stated: "If This Plan ends in whole or in part, your benefits which are affected will end" (Pl. Exh. H). The December 23, 1991 version stated that Sears reserved the right "to change the amount of contributions required from Plan participants," and that "[a]lthough Sears intends to continue the Plan, the Company necessarily reserves the right to modify, amend, suspend, or terminate it at any time" (Pl. Exh. I).

Policy, in a section not specifically directed at retirees, we find the language: "The Employer will have the right to discontinue this Policy" (Pl. Exh. G). According to Sears, these clauses in the SPD and the Policy reserved the Company's right to amend the Plan at will.

The above-quoted excerpts from the Plan documents serve as a necessary backdrop to our discussion of the central question presented by this lawsuit: was Sears' decision to reduce retiree life insurance benefits a violation of the Plan? Answering this question requires us to look to the language and terms of the Plan documents, and to extrinsic evidence as well, in order to determine whether the life insurance benefits at issue here vested upon retirement. Because we answer this question in the negative, Sears wins.

## DISCUSSION

Retiree life insurance constitutes a "welfare benefit" under ERISA, 29 U.S.C. § 1002(1), and therefore does not automatically vest under the statute. *See* Ryan v. Chromally American Corp., 877 F.2d 598, 603 (7th Cir. 1989). An employer, however, may choose to vest welfare benefits by contract. *See id.* Whether the employer intended welfare benefits to vest "presents an issue of contractual interpretation," for which summary judgment is "particularly appropriate." Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 564 (7th Cir. 1995). Because welfare benefits are not automatically vested under the statute, there is a "presumption that welfare benefits do not vest." Diehl v. Twin Disc, Inc., 102 F.3d 301, 307 (7th Cir. 1996).

The Seventh Circuit has not been receptive to lawsuits such as this one. In a number of recent cases our circuit court has held that welfare benefits do not vest if an employee benefits plan contains a reservation of rights clause. *See, e.g.,* Murphy, 61 F.3d at 564; Ryan,

877 F.2d 603. Relying on these cases and on the reservation of rights clauses contained in its Plan documents, Sears argues that the retiree life insurance benefits at issue in this case did not vest upon retirement and therefore it was free to modify those benefits as it did. Plaintiffs respond with a number of counter-arguments. First, plaintiffs interpret the same contract language to reach the opposite conclusion. They argue that the language of the Policy in particular indicates that Sears intended to provide lifelong insurance benefits to retirees. Second, plaintiffs argue that the premiums they paid over ten continuous years while employed at Sears purchased retiree life insurance benefits, and therefore Sears cannot modify those benefits without breaching its covenant with plaintiffs. Third, plaintiffs point to extrinsic materials which they claim reflect Sears' understanding that life insurance benefits vested upon retirement. Finally, plaintiffs argue that the Plan documents should be interpreted under Illinois law, rather than federal law, and that Illinois law forbids Sears from reducing retiree life insurance benefits. We address, and reject, each of plaintiffs' arguments below.

## I. The Language of the Plan Documents

In case after case, in this circuit and others, courts have held that employee benefits plans containing reservation of rights clauses do not give rise to vested welfare benefits. *See* Murphy, 61 F.3d at 566; Ryan, 877 F.2d at 602-03; Salamouni v. Daiwa Bank Ltd., 966 F. Supp. 672, 677 (N.D. Ill. 1997), *aff'd*, 139 F.3d 902 (1998); *see also* Sprague v. General Motors Corp., 133 F.3d 388, 392-401 (6th Cir.) (*en banc*), *cert. denied*, 524 U.S. 923 (1998); In re Unisys Corp. Retiree Medical Ben. ERISA Litig., 58 F.3d 896, 899-904 (3d Cir. 1995); Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 856 (4th Cir. 1994), *cert. denied*, 514 U.S. 1057 (1995). In all of these cases the court entered summary judgment in favor of the employer.

Based on this substantial case law, Sears makes the straightforward argument that since its
Plan documents contain reservation of rights clauses, the life insurance benefits at issue here
did not vest upon retirement. Sears relies primarily on the two reservation of rights clauses
found in the SPD, but also draws support from the clauses contained in the Policy.
Analogizing the reservation of rights clauses of its Plan documents to the clauses at issue in the
cases cited above, Sears argues that we should follow the precedent of those courts and hold
that retiree life insurance benefits did not vest upon retirement.

Plaintiffs do not agree with Sears' reading of the Plan documents. To the contrary,
plaintiffs believe that the language of the Policy in particular supports their position. Plaintiffs
therefore begin their rebuttal by downplaying the relevancy of the SPD and instead
emphasizing the language of the Policy. They contend that the SPD is governed by the Policy,[3]
and where there is a conflict between the two, the Policy trumps. *See* Andersen v. Chrysler
Corp., 99 F.3d 846, 858 (7th Cir. 1996). The language of the SPD cannot be dismissed so
easily. The SPD forms an integral part of the Plan documents and must be considered when
determining whether an employer intended welfare benefits to vest. *See* Chiles v. Ceridian
Corp., 95 F.3d 1505, 1511 (10th Cir. 1996); *see also* Ryan, 877 F.2d at 601, 603; 29 U.S.C. §
1022. Furthermore, plaintiffs themselves rely on SPD language in support of their argument
that Sears promised to provide lifelong insurance benefits to retirees (Cplt. at ¶ 30). Therefore,
it is appropriate for Sears to rely on SPD language in arguing that the life insurance benefits
did not vest upon retirement.

_____

[3]Plaintiffs refer us to the following language from the SPD: "The principle features of the Group
Life [Insurance Plan] ... are summarized in this booklet. The detailed terms and conditions of the Plans are
contained in the group life insurance policies ... issued by the insurance companies to Sears, Roebuck & Co"
(Sears Exh. 1).

Plaintiffs are left with the task of defusing the persuasive impact of the SPD's reservation of rights clauses, both the specific ("Insurance after retirement will be continued only while the [Plan] is in effect and unchanged ...") and the general ("the Company reserves the right to modify, amend, suspend or terminate [the Plan] at any time.") (Sears Exhs. 1 and 2). They attempt to do so by arguing that the clauses are ambiguous when read in light of Sears' promise, also contained in the SPD, that qualifying retirees will continue to receive life insurance benefits "without further cost." We disagree. The language of Sears' SPD mirrors that of the SPDs addressed in a number of other cases. Courts have held that where a company has reserved its right to change or terminate a plan, all welfare benefits provided under the plan, even those bestowed for a "lifetime," do not vest. *See* Frahm v. Equitable Life Assurance Society, 1995 WL 579282, at *3 (N.D. Ill. Sep. 29, 1995) (holding that benefits did not vest where the SPD stated that "when you ... retire ... your health benefits will be free," but also stated that the company "reserves the right to change or terminate the group benefit program"); *see also* Sprague, 133 F.3d at 392-401 (holding that benefits did not vest where the SPD provided for "lifetime" benefits but also included a reservation of rights clause); In re Unisys, 58 F.3d at 899-904 (same); Musto v. American General Corp., 861 F.2d 897, 905-06 (6th Cir. 1988) (no vesting where the SPD stated that retiree benefits would continue "without further cost to the retiree" but also contained a reservation of rights clause), *cert. denied*, 490 U.S. 1020 (1989). Contrary to plaintiffs' argument, a contextual reading of the SPD does not diminish the legal force of the reservation of rights clauses contained therein.

Unaided by the SPD, plaintiffs direct our attention to the language of the Policy, which they contend conflicts with, and therefore trumps, the SPD language. Plaintiffs first point out

that the Policy does not contain the two clauses set forth in the SPD.[4] Furthermore, plaintiffs argue that the Policy's chief reservation of rights clause, in which Sears "reserves the right to change or terminate This Plan in the future," is more favorable to their position than those contained in the SPD. Underscoring the words "in the future," plaintiffs argue that this language may allow Sears to modify the future retirement benefits of current employees, but precludes it from interfering with the benefits of those who have already retired. This clause, however, appears in the Retiree Section of the Policy and is meant specifically for retirees.[5] Therefore, we cannot interpret the words "in the *future*" to mean what plaintiffs say they mean – *i.e.*, that the reservation of rights applies to active employees only. Even if the clause applies to active employees as well as retirees, the words "in the future" create no ambiguity. Retirees are at least part of the intended audience of the clause. A reservation of the right to change or terminate retirees' benefits "in the future" cannot be construed as an intention on the part of Sears to vest benefits upon retirement.

Plaintiffs' interpretation of the Retiree Section's other reservation of rights clauses is similarly unconvincing. Recall that the Retiree Section states that "benefits will end on the date This Plan is changed" and if "This Plan or the Group Policy ends ... your benefits which are affected will end" (Pl. Exh. J). Plaintiffs argue that these clauses concern the insurance

---

[4]Plaintiffs are not entirely correct on this point. As discussed in note 2 above, the December 23, 1991 version of the Policy contained a reservation of rights clause nearly identical to that found in the SPD (Pl. Exh. I). For purposes of this motion, however, we will examine only the version of the Policy in effect at the time Sears reduced retiree life insurance benefits in 1998.

[5]That retirees are the intended audience of that section is made clear by the title of the section, "Your Benefit Plan for Retired and Disabled Associates," and by the language on the next page which addresses the section, "To Our Retired and Disabled Associates" (Pl. Exh. J).

policy between Sears and MetLife, and not the welfare benefits provided under the Plan.[6] Specifically, plaintiffs assert that the clauses reserve Sears' right to cancel its insurance policy with MetLife and to release MetLife from providing coverage if the policy is canceled, but do not authorize Sears to amend or terminate the Plan. Plaintiffs' argument directly contradicts the language of the clauses, which makes specific reference to "This Plan" and not just the MetLife policy. Furthermore, there is little grounds for distinguishing between the MetLife policy and the Plan on this point as courts have held that a company's reservation of its right to terminate the insurance policy is the functional equivalent of a reservation of the right to terminate the benefit plan. *See* Gable, 35 F.3d at 856; Musto, 861 F.2d at 902; Salamouni, 966 F. Supp. at 673-74, 677-78.

The language of the Policy and that of the SPD support the same conclusion -- that Sears did not intend for life insurance benefits to vest upon retirement. Sears reserved its right to change or terminate benefits, including retiree life insurance, in both the Policy and the SPD.

Contrary to plaintiffs' argument, the Policy and SPD are not in conflict with each other and, in light of the host of recent cases interpreting similar contracts, not ambiguous on their face. Plaintiffs cannot rely on the language of the Plan documents to escape the phalanx of cases arrayed against them. Indeed, if we base our decision solely on the clauses contained in the Plan documents, the case law directs us to enter summary judgment in favor of Sears.

---

[6]Plaintiffs make the same argument with respect to the statement, "The Employer will have the right to discontinue this Policy," found in a section of the Policy not specifically directed at retirees (Pl. Exh. G).

## II. Premiums Payments

Perhaps aware that the weight of precedent is stacked against them, plaintiffs do not hinge their case on the language of the Plan documents alone. Instead, plaintiffs raise a creative, alternative argument based on the specific terms of the retiree life insurance benefit. As stated in the SPD, a retiree will receive life insurance benefits under the Plan only if she has "been a member of the Plan for ten continuous years at the time of [her] retirement" (Sears Exh. 1). In order to be a member, active Sears employees are required to pay life insurance premiums. Plaintiffs argue that by paying premium for ten continuous years while employed, they purchased their retiree life insurance benefits. According to plaintiffs, ten years of premium payments constitutes separate consideration (in addition to continued employment) obligating Sears to provide lifelong insurance benefits to retirees.

Plaintiffs' argument – that they purchased retiree life insurance by paying premiums – is a novel one with little case law support.[7] It rests on the theory that employers may make promises regarding welfare benefits outside the four corners of the Plan. *See* Frahm v. Equitable Life Assurance Society, 137 F.3d 955, 957 (7th Cir.), *cert. denied*, 119 S.Ct. 55 (1998); Diehl, 102 F.3d at 302-08. Plaintiffs particularly emphasize the Seventh Circuit's holding in Diehl. In that case the employer and union entered into a Shutdown Agreement which provided retirees "lifetime" health and life insurance benefits "notwithstanding any provision" of an earlier Insurance Agreement between the two parties. *Id.* at 306. The

---

[7]The parties direct us to three cases involving ERISA plans which, like Sears' Plan, contained a premium payment requirement. *See* Musto, 861 F.2d at 905; Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 490-91 (2d Cir. 1988); Salamouni, 966 F. Supp. at 674. These references provide little guidance, however, for they discuss premium payments only in passing and do not address the issue whether payment of those premiums purchased lifetime welfare benefits.

Insurance Agreement contained a reservation of rights clause. The court held that the Insurance Agreement's reservation of rights clause did not apply to the Shutdown Agreement's provision of lifetime benefits because, *inter alia*, the Shutdown Agreement was supported by separate consideration from the Insurance Agreement. *Id.* at 306-07. Plaintiffs argue that, like Diehl, this case is one in which employees provided separate consideration in exchange for the employer's promise to provide lifelong welfare benefits. Here, the purported separate consideration was ten years of premium payments. The separate consideration at issue in Diehl, however, came in the form of an entirely independent contract and was based on a bargain between the parties regarding the closing of a company plant. *Id.* at 302-03. In contrast, the purported separate consideration in our case was contained in the same contract as the reservation of rights clauses, a contract specifically concerning insurance benefits. *Compare id.* at 307. While plaintiffs are correct that under Diehl separate consideration can support a claim of vested welfare benefits, the situation presented in Diehl bears little resemblance to the one we face here. In sum, plaintiffs' argument is not buoyed by the case law.

Moreover, plaintiffs cannot seek harbor in the language of the Plan documents, for they indicate that the premiums paid by active employees purchased term life insurance while employed, not permanent life insurance after retirement. The Policy provides that the "payment of a premium will not maintain the insurance in force beyond the day before the date the next premium is due" (Pl. Exh. G), and, in the Retiree Section, that the "benefits under This Plan do not at any time provide paid-up insurance, or loan or cash values" (Pl. Exh. J). This language sheds light on the purpose of the premiums. It indicates that premiums

were paid in exchange for year-to-year life insurance coverage while actively employed at Sears. Although plaintiffs argue that the premiums also were paid in exchange for a commitment by Sears to provide permanent life insurance upon retirement, they cannot point to anything in the Plan documents linking payment of premiums to retirement benefits. Absent such support in the record, plaintiffs' noble effort is doomed. The argument that premium payments constituted separate consideration giving rise to vested life insurance, though valid in theory, is not borne out by the facts of this case.

Plaintiffs read too much into the premium payment requirement. A better interpretation of that contract term is a literal one – ten years of participation in the Plan simply was a prerequisite for receiving retiree life insurance benefits. Plaintiffs are understandably upset, for they may have expected that the premiums purchased more than year-to-year coverage. But by fulfilling the prerequisites expressly stated in the Plan, plaintiffs did not provide additional or separate consideration entitling them to vested life insurance benefits. The Plan contains no such promise on the part of Sears. And courts have held that merely fulfilling the prerequisites of a plan, at least when the prerequisite is continued employment, does not trigger a vesting of welfare benefits. *See* Moore, 856 F.2d at 491-92; Etherington v. Bankers Life & Cas. Co., 747 F. Supp. 1269, 1275-78 (N.D. Ill. 1990),[8] *aff'd*, 968 F.2d 1218 (7th Cir. 1992); *see also* Merk v. Jewel Companies., Inc., 848 F.2d 761, 763 (7th Cir.) ("[t]hat retirees had worked in earlier years in the expectation that they were receiving money

---

[8]Just as in this case, the plaintiffs in Etherington were required to participate in the company's benefits plan and pay premiums while employed in order to receive benefits upon retirement. *Id.*, 747 F. Supp. at 1271-72. However, Judge Shadur's decision in Etherington was not based on the payment of premiums, but rather on the principle that welfare benefits did not vest by virtue of plaintiffs' decision to continue working for the company. *Id.* at 1278.

today and health benefits later would not matter"), *cert. denied,* 488 U.S. 956 (1988). The

principle of these cases operates against plaintiffs. Under the common law interpretation of

ERISA, an employer may require employees to satisfy certain preconditions in order to receive

welfare benefits and, if it has sufficiently reserved its rights, may later modify even the benefits

of those individuals who have met the prerequisites. That is what Sears did here, and

plaintiffs' payment of premiums does not strip Sears of its contractual right to modify

unvested retiree life insurance benefits.

## III. Extrinsic Ambiguity

In their next argument, plaintiffs attempt to avert summary judgment by turning to

evidence outside the Plan documents. This argument is based on the concept of extrinsic

ambiguity. The Seventh Circuit recently described this doctrine in another ERISA case:

> In limited circumstances ... parties are allowed to present extrinsic evidence to
> demonstrate that although the contract looks clear, anyone who understood the
> context of its creation would understand that it doesn't mean what it seems to
> mean. This is the doctrine of extrinsic ambiguity.

Mathews v. Sears Pension Plan, 144 F.3d 461, 466 (7th Cir.), *cert. denied,* 119 S.Ct. 618 (1998).

The doctrine has rare application. For example, in Mathews it was used to assist the court in

parsing the technical meaning of the phrase "date of distribution" from the term's common-

sense usage. *Id.* at 466-67. Because it "is an exception to the rule that contracts clear on their

face will be enforced as written," the doctrine "should be interpreted narrowly lest it swallow

the rule and make written contracts mere scraps of paper." PMC, Inc. v. Sherwin-Williams

Co., 151 F.3d 610, 615 (7th Cir. 1998), *cert. denied,* 119 S.Ct. 871 (1999). A court applying the

doctrine of extrinsic ambiguity should examine only "objective" evidence that does "not

depend on the credibility of testimony (oral or written) of an interested party." Mathews, 144

F.3d at 467; *see* <u>Murphy</u>, 61 F.3d at 568. The quality of the evidence also matters: "Unless the evidence sought to be introduced not only is objective but would if believed make a compelling case that the contract means other than what it seems to mean, it should be kept out." <u>PMC</u>, 151 F.3d at 615.

Plaintiffs claim to have uncovered extrinsic evidence revealing Sears' understanding that life insurance benefits vested upon retirement, and therefore argue that we should send this case to trial even if we find that the Plan documents are facially unambiguous in Sears' favor.[9] In support of their argument, plaintiffs point to three categories of extrinsic evidence: informal handbooks and brochures, affidavits of a number of the Company's managers, and two statements by the Company's top official. In all of these materials, Sears refers to retiree life insurance benefits as "paid up." While this evidence may have created the impression that life insurance benefits vested upon retirement, it does not constitute, neither in degree nor in kind, the sort of extrinsic evidence courts deem necessary to hold that a contract does not mean what it says it means.

Plaintiffs first point to informal booklets in which Sears describes its life insurance benefits as "Paid Up Group Life Insurance – Free life insurance, at age 60 ... (provided you have been a member of the Plan for at least ten years)" (Pl. Exh. N). Sears included this statement, or one substantively similar to it, in informal handbooks and brochures distributed to its employees from 1959 to 1982 (Pl. Exhs. O, P-1 to P-16, Q-1 to Q-2). Plaintiffs argue that these materials informed employees that by paying premiums for ten years they purchased "paid up" insurance, free upon retirement for life. However, nearly all of these handbooks and

---

[9]Plaintiffs contest Sears' motion for summary judgment on these grounds; they do not rely on the doctrine of extrinsic ambiguity in support of their own cross-motion.

brochures referred the reader to the SPD for further details regarding the Plan and, as we have discussed above, the SPD specifically reserved Sears' right to change or terminate welfare benefits. *See* Etherington, 747 F. Supp at 1277-78 (holding that benefits booklet cannot render plan ambiguous where the booklet incorporated by reference official plan document which contained a reservation of rights clause). In any event, the evidentiary value of these booklets is defeated by their informal nature. Courts have held that informal descriptions of plan benefits, such as these, do not trump the provisions of official plan documents. *See* Alday v. Container Corp. of *America*, 906 F.2d 660, 665-66 (11th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991); Moore, 856 F.2d at 492; Etherington, 747 F. Supp. at 1276-77.[10]

Plaintiffs also present as extrinsic evidence the affidavits of a number of the Company's managers stating their belief that the life insurance benefits were "paid up" after ten years of participation in the Plan (Pl. Exhs. R, MM-UU). As plaintiffs point out, some of these managers were responsible for informing employees about retirement benefits, and therefore their understanding of the terms of the Plan may have had an impact on the expectations of employees. The gravity of this fact is not lost on us.[11] But the affiants are all members of the plaintiff class in this lawsuit, and all of them have had their life insurance benefits reduced as a result of the 1997 amendments to the Plan. As such, their statements constitute subjective evidence and are not appropriately considered in an extrinsic ambiguity analysis. *See* Mathews, 144 F.3d at 467 ("An interested party may not by his oral testimony create an

---

[10]Fighting fire with fire, Sears directs our attention to other informal materials, including retirement seminar booklets and correspondence to retirees, which informed employees that Sears reserved its right to change or terminate retiree life insurance benefits (Sears Exhs. 45 and 48).

[11]Plaintiffs' argument, based on their expectations, may be more appropriate in the context of Count IV of the Complaint, alleging "Equitable and Promissory Estoppel." Plaintiffs did not seek class certification of Count IV and it is not a subject of either party's motion for summary judgment.

ambiguity in contractual language that seems clear"); <u>Murphy</u>, 61 F.3d at 568. Affidavits of interested parties by their very nature do not meet the high level of objectivity required of extrinsic evidence.

Finally, plaintiffs rely on two statements made by the top official at the Company. On August 11, 1981, Edward R. Telling, then the chairman of the board, described the retiree life insurance benefit to other board members as "a paid up policy" (Pl. Exh. CC). And in 1990, chairman Edward A. Brennan sent a letter to a retiree referring to the "paid-up life insurance commitment." (Pl. Exh. FF). These two statements were merely references in passing and do not amount to the sort of significant evidence required to overcome a facially unambiguous contract.[12] Indeed, Brennan's letter to the retiree states only that the Company has "made no changes to the paid-up life insurance commitment," and therefore does not constitute an admission that the Company could never change the benefit. In short, the two minor statements simply do not make a "compelling case that the contract means other than what is seems to mean ... ." <u>PMC</u>, 151 F.3d at 615.

The Retiree Section of the Policy provides that "the benefits under the Plan do not at any time provide paid-up insurance" (Pl. Exh. J). This is confirmed by the Plan document's reservation of rights clauses. Plaintiffs have directed us to booklets, affidavits and statements that may well have had the effect of influencing the expectations of some (if not many) employees. However, these extrinsic materials do not constitute the sort of objective and compelling evidence required to overwhelm the plain language of the Plan documents.

_____

[12]Plaintiffs' citation to a 1972 newsletter for catalog order employees, in which the Company states that an employee "no longer pays any premiums" and has a "fully paid up life insurance policy" after retirement, fails to persuade for similar reasons (Pl. Exh. AAA).

## IV. Illinois Law and ERISA Preemption

Plaintiffs save their most daring argument for last. They urge us to interpret the Plan documents through the prism of Illinois decisional law rather than federal common law of ERISA. If we do so, we will see, say plaintiffs, that Illinois law bars Sears from reducing retiree life insurance benefits. In support of this argument plaintiffs refer us to a choice of law clause contained in the Policy:

> Any Group Policy issued upon this application will be delivered in Illinois. Such Policy will be considered an Illinois contract. The terms of such Policy will be construed in accordance with the laws of that jurisdiction.

(Pl. Exh. G). Plaintiffs argue that by including this provision in the Plan documents, Sears expressly contracted to waive ERISA preemption and voluntarily adopted Illinois decisional law for questions of plan interpretation. Plaintiffs admit that, as a general matter, state law regarding plan interpretation is preempted by ERISA. *See* Hammond v. Fidelity and Guaranty Life Ins. Co., 965 F.2d 428, 430 (7th Cir. 1992). But they contend that the Seventh Circuit has not yet decided how it would enforce a choice of law provision contained in an ERISA plan, as is the case here.

ERISA's preemption of state law is broad and clearly stated in the statute. With limited exceptions, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ... ." 29 U.S.C. § 1144(a). See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987) (referring to § 1144(a) as "deliberately expansive"). The breadth of ERISA preemption embodies the intent of Congress to foster "uniformity of decisions under ERISA." Hammond, 965 F.2d at 430; see Pilot Life, 481 U.S. at 56. For these reasons, our circuit has held that ERISA preempts state law with respect to the interpretation

of plan documents and has instructed us to construe ERISA plans "by referring to the federal common law rules of contract interpretation." Hammond, 965 F.2d at 430.

We see no reason to disobey these sound rules here. Even if Sears intended to adopt Illinois law for purposes of interpreting the Plan documents, which is not at all certain,[13] ERISA preemption would negate such an attempt. A choice of law provision does not operate to waive the applicability of federal law regarding interpretation of an ERISA plan. Judge Castillo recently addressed a similar situation in Tormey v. General American Life Ins. Co., 973 F. Supp. 805 (N.D. Ill. 1997). The plaintiff in that case argued, as plaintiffs do here, that the defendant voluntarily waived federal law by including a provision in its ERISA plan which stated that "the policy is delivered in Illinois and is governed by its laws." Id. at 811. Rejecting this argument, Judge Castillo held:

> The [insurance] policy may be governed by Illinois law in general, but that cannot prevent ERISA preemption. One of the primary purposes of ERISA is to create uniform standards for employee benefit plans. Even if the plan is governed by Illinois law, that law is preempted to the extent that it is a law "relating to" an employee benefit plan, which is superseded by ERISA's § 514 [29 U.S.C. § 1144]. Therefore, ERISA governs Tormey's claims regardless of any private contractual agreement to waive federal law.

Id. at 811 (citations omitted). The Seventh Circuit has expressed a similar distaste for the type of argument plaintiffs make here, albeit in dicta. See Morton v. Smith, 91 F.3d 867, 870 (7th Cir. 1996) (commenting that it would give no effect to an Illinois choice of law provision, even if it were contained in an official plan document, because "federal common law of ERISA preempts most state law in regulating the interpretation of benefit plans.").

---

[13]Sears most likely intended the choice of law provision to apply to its relationship with its insurance company (MetLife), which may not be governed by ERISA, and not its relationship with plan participants. See Gallagher Corp v. Massachusetts Mut. Life Ins. Co., 940 F. Supp. 176, 181-82 (N.D. Ill. 1996).

ERISA preemption cannot be waived in the manner plaintiffs suggest. Plaintiffs bring this action under ERISA, alleging breach of an ERISA plan (Cplt. at ¶ 1). Accordingly, the Plan documents are to be interpreted under the federal decisional law of ERISA, as we have done.

## CONCLUSION

For the reasons set forth above, Sears' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

March 15 , 2000.