IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

FEB 1 5 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| IN RE: SEARS RETIREE GROUP LIFE INSURANCE | ) | Civil Action |
| LITIGATION THIS DOCUMENT RELATES TO: | ) | No. 97 C 7453 |
| ALL ACTIONS | ) | Judge James B. Moran |
| | ) | |

## SEARS' RESPONSE TO THE PLAINTIFFS'
## PETITION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

**DOCKETED**

FEB 2 2 2002

Defendants, Sears Retiree Group Life Insurance Plan and Sears, Roebuck and Co.

(collectively, "Sears") submit this response to the Petition For Attorneys' Fees, Costs And

Expenses filed by the attorneys for the plaintiffs.

## INTRODUCTION

The plaintiffs' attorneys here lost every substantive battle in this case. They lost their

attempt to have a class certified for their estoppel and fiduciary duty claims. They lost on the

merits of the "plan enforcement" and "bilateral contract" claims in Counts I and II, which Sears

had agreed should proceed on a class basis. And they lost their renewed motion to have the

estoppel and fiduciary duty claims certified for class treatment.

It is true that Sears has agreed to a settlement, but that settlement was not reached

because of the actions of the plaintiffs' attorneys. Rather, it was the retirees themselves and the

actions that they took, independently of the attorneys here, that was the catalyst for the

settlement. The retirees themselves convinced Sears' new management that it made sense to try

to heal the rift that the reduction in retiree life insurance had caused with its retirees.

Under these circumstances, it would be wrong for the plaintiffs' attorneys, who lost every

motion they brought for their <u>clients</u>, to prevail on the petition for attorneys' fees for <u>themselves</u>.

As demonstrated below, the plaintiffs' signal lack of success, compared with the relief they sought to achieve, means that the Court should award no more than the $1.00 in fees and costs that the parties established as a minimum in the Stipulation of Settlement. See pp. 7-14. It is Sears' position that this is the appropriate award of fees in the case.

However, if the Court believes that some award of fees is necessary, the award should be made on a lodestar basis, see pp. 15-19, with the lodestar substantially reduced because of the plaintiffs' lack of success, see pp. 19-21, and with time not reasonably expended on this litigation eliminated from the calculation. See pp. 21-24. In addition, any lodestar award should not be enhanced by a multiplier. See pp. 24-25. Although it does not agree that even the lodestar should be awarded, Sears has calculated the plaintiffs' attorneys' lodestar, and believes that it should be more than $1,590,524.25. See p 24. Finally, even if fees were to be awarded on a percentage basis – and they should not be – the percentage should be substantially reduced to reflect the plaintiffs' attorneys' limited achievement. See pp. 25-26.

**BACKGROUND**

**The Reduction In Retiree Life Insurance**

As the Court is well aware, this litigation arises out of Sears' decision to reduce retiree life insurance under the Plan over a ten-year period, beginning on January 1, 1998. Under the reduction, Sears would reduce retiree life insurance in ten equal annual increments to a level amount of $5,000. By making these reductions, Sears would have realized approximately $310

million in savings in the cost of its retiree life insurance benefits. Declaration of Jerrold Levy, Ex. A.[1]

**This Litigation**

A number of lawsuits were brought to challenge Sears' reduction of retiree life insurance, and to have Sears restore the $310 million of retiree life insurance benefits it was reducing. After those lawsuits were consolidated before this Court and a consolidated complaint was filed, the plaintiffs' attorneys moved for class certification on all counts. In response, Sears agreed that class certification was appropriate on the "plan enforcement" and "bilateral contract" claims in Counts I and II, but opposed certification for the other claims in the complaint. This Court agreed with Sears, and rejected class certification on all claims but Counts I and II, the two claims for which Sears had not contested certification. In re Sears Retiree Group Life Ins. Litig., No. 97 C 7453 (N.D. Ill. Jan. 7, 1999) (Ex. B).

Sears subsequently moved for summary judgment on the two class claims, and the plaintiffs cross-moved for summary judgment on the same claims. In ruling for Sears and against the plaintiffs, this Court rejected every argument advanced by the plaintiffs' attorneys, and found that Sears unambiguously "reserved its right to change or terminate benefits, including retiree life insurance, in both the Policy and the SPD [Summary Plan Description]." In re Sears Retiree Group Life Ins. Litig., 90 F. Supp. 2d 940, 946-47 (N.D. Ill. 1999). It therefore

---

[1] The exhibits to this brief are being submitted in a separately bound appendix of exhibits. In addition, Sears is submitting marked copies of the plaintiffs' attorneys' billing records in three additional volumes. The billing records are numbered from Exhibit 1 to Exhibit 22; the other exhibits are lettered from Exhibit A to Exhibit J.

held that there was no basis under the terms of the Plan for the relief that the plaintiffs sought in Counts I and II.

Shortly after the Court granted summary judgment to Sears on the class claims, the plaintiffs moved for partial class certification on the fiduciary duty and estoppel claims, essentially asking the Court to reconsider its previous class certification motion. Once again, however, the Court rejected the plaintiffs' arguments outright, and concluded that "class treatment of plaintiffs' estoppel and breach of fiduciary duty claims is inappropriate given the variety of different communications received by different retirees." In re Sears Retiree Group Life Ins. Litig., 198 F.R.D. 487, 492 (N.D. Ill. 2000).

At this point, Sears would have faced liability only if it lost the individual estoppel and fiduciary duty claims brought by the named plaintiffs, or if other retirees actually filed suit and prevailed on similar claims. Given the Court's prior rulings, any such claims, whether those brought by the plaintiffs or those that might have been brought by other retirees, would have needed to be resolved separately.[2] On June 1, 2001, after the parties selected a group of twelve named plaintiffs whose individual estoppel and fiduciary duty claims would be decided first, Sears moved for summary judgment on all claims brought by those twelve plaintiffs. However, on June 5, 2001, the parties reached a settlement in principle.

---

[2] In their fee petition, the plaintiffs' attorneys once again rehearse the evidence they unsuccessfully relied upon in the three motions that they lost. Pl. Br. at 2-3. However, there is no reason to think that if this case were going forward, their third attempt to rely on this evidence would be any more successful than their first two, especially given the unambiguous reservations of right contained in the SPDs and other Plan documents.

8921447.2

**The Settlement**

That settlement did not come about because Sears feared it might lose some of the individual claims brought by individual plaintiffs. See Declaration of Greg Lee, Ex. C, ¶ 4-5. Rather, Sears' top executives, including its new CEO, Alan Lacy, and its new Senior Vice President for Human Resources, Greg Lee, had met in early 2001 with retiree leaders, including the leaders of the National Association of Retired Sears Employees ("NARSE") and the heads of Sears retiree clubs throughout the country, and had heard firsthand the anger that retirees felt about the reduction in retiree life insurance. Id. ¶ 3. Mr. Lacy and Mr. Lee decided that "to see if there was some way to bring the disaffected Sears retirees back into the fold." Id. ¶ 4. It was only at this point, in March 2001, that Sears approached the attorneys for the plaintiffs about the possibility of settlement. Id. Sears did not enter into these discussions and then ultimately settle the case because of the strength of the plaintiffs' position or because it was concerned that it might lose some individual claims. Rather, as Mr. Lee put it, "we wanted to try to bring the Sears 'family' back together." Id.

Under the parties' Stipulation of Settlement (Ex. D), which the Court preliminarily approved on October 10, 2001, Sears agreed that for class members who submit claim forms, it would skip the planned life insurance reduction at least for 2003, and possibly for part of later years. More than fifty percent of the class has submitted claim forms, see Pl. Br. at 3, 8, so Sears will be required to skip scheduled life insurance reductions having a present value of $28 million. See Pl. Br. at 3, 8. [3] The Stipulation of Settlement also calls for each of the 71 named

---

[3]     As set forth in the Stipulation of Settlement, if all of the class members had submitted claim forms – and that of course did not happen – eliminating the scheduled 2003 reduction for all of them would have had a present value of roughly $34.2 million.

plaintiffs (or their estates) to receive an incentive payment of $5,000, or a total of $355,000, and

for a $100 gift card to be given to the principal plan beneficiary of each class member who has

died as of December 31, 2002. The plaintiffs' actuary estimates the value of these gift cards to

be $600,000. Feinstein Aff., Pl. Ex. B. Thus, the full value of the settlement going to the

plaintiffs and other class members is $28,955,000 – less than ten percent of the approximately

$310 million in benefits that the plaintiffs' attorneys originally sought for their clients.[4] Looked

at another way, given the Court's rulings and the status of the case, over 7,000 of the

approximately 80,000 retirees affected by the reduction in life insurance would have had to file

suit and prevail on their claims before Sears would have been liable for this amount of money. It

is clear that nowhere near that number of plaintiffs would have sued, let alone won – which

confirms that Sears did not settle because it feared liability in the lawsuit, but, as Mr. Lee

explained, in an effort to make peace with its retirees.

 As part of the Stipulation of Settlement, the parties agreed that attorneys' fees and costs

would be paid by Sears, and agreed that the range of fees would be between $1.00 and

$5,430,000.00, with the Court to decide the final amount. The range of fees that the plaintiffs

and their attorneys agreed was appropriate gave the plaintiffs' attorneys an opportunity to ask for

more than their lodestar, but also gave Sears the opportunity to ask for only a nominal award of

fees. As demonstrated below, that nominal award of fees is the appropriate award here, in light

of the limited scope of the relief obtained, compared to the relief sought, and the plaintiffs' lack

---

[4] The plaintiffs' attorneys also contend that Sears' promise not to reduce retiree life
insurance below $5,000 and not to accelerate the current reduction schedule – things that Sears
was not planning to do in any event, see Lee Decl. ¶ 6-7 – should also be taken into account
while valuing the settlement for purposes of awarding attorneys' fees. However, as explained
below, this benefit is far too speculative to be considered here. See pp. 9-11.

of success on the merits. And even if it were appropriate to award anything more than a nominal amount of fees -- and it is not -- the fee petition submitted by the plaintiffs' attorneys should be substantially reduced.

## ARGUMENT

## I. THE COURT SHOULD AWARD ONLY THE $1.00 MINIMUM SET FORTH FOR FEES AND COSTS IN THE STIPULATION OF SETTLEMENT.

### A. The Plaintiffs' Attorneys' Lack Of Success Merits Only A Nominal Award.

In awarding attorneys' fees, the most significant consideration is the result the attorneys were able to achieve in court for their clients. "[I]ndeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). See also Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 790 (1989) ("the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee"); Jadlowski v. Valley View Community Unit School Dist. #365-U, 109 F.3d 1250, 1255 (7th Cir. 1997) (following Hensley). Cf. Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 121 S. Ct. 1835, 1840 (2001) (rejecting "catalyst theory," and holding that defendant's voluntary change in conduct does not entitle plaintiff to fees when plaintiff does not obtain a "judicially sanctioned change in the legal relationship of the parties").

"[A] district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. Such a comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." Farrar, 506 U.S. at 114-15 (internal citations and quotation marks

omitted). Accordingly, the Supreme Court has directed the District Courts to "consider the relationship between the extent of success and the amount of the fee award. . . . A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 438-40.[5] Based on these principles, the Seventh Circuit has concluded that "a plaintiff's failure to obtain at least 10 percent of the damages it had sought will weigh heavily against any award of attorneys' fees." Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 592 (7th Cir. 2000) (emphasis added). See also Perlman v. Zell, 185 F.3d 850, 859 (7th Cir. 1999); Cole v. Wodziak, 169 F.3d 486, 489 (7th Cir. 1999). And other Seventh Circuit cases have upheld significant reductions in the lodestar amount of fees for an attorney's lack of success. Cooke v. Stefani Mgmt. Serv. Inc., 250 F.3d 564, 570 (7th Cir. 2001) (reduction of fifty percent); Connolly v. National School Bus Serv., Inc., 177 F.3d 593, 597-98 (7th Cir. 1999) (reduction of fifty percent).

In this case, "the degree of success [the plaintiffs' attorneys] obtained" (Farrar, 506 U.S. at 114) cannot justify the fee award that they seek. As discussed above, the plaintiffs' attorneys sought to reverse Sears' decision to reduce retiree life insurance over ten years, but lost every

---

[5]     The rule is not different because Sears has agreed that common fund principles may be applied here, even though fees will be paid by Sears, not the members of the class, who are the beneficiaries of the common fund supposedly created. As this Court recognized some time ago, "the amount involved and the results obtained . . . remain[ ] a crucial consideration in 'common fund' cases." Phemister v. Harcourt Brace Jovanovich, Inc., No. 77 C 39, 1984 WL 21981, at *19 (N.D. Ill. Sept. 14, 1984) (Moran, J.) (Ex. E). See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 (3d Cir. 1995) (fees in common fund cases are apportioned "in a manner that rewards counsel for success and penalizes it for failure"); Gottlieb v. Barry, 43 F.3d 474, 482 & n.4 (10th Cir. 1994) ("the amount involved and the results obtained" is one of the factors considered in both statutory fee cases and common fund cases); Skelton v. General Motors Corp., 661 F. Supp. 1368, 1376 (N.D. Ill. 1987) (Nordberg, J.) (Seventh Circuit applies "[t]he amount involved and the results obtained," among other factors, in both common fund and statutory fee cases).

substantive motion along the way. Moreover, under the settlement, and given the number of claim forms that have been submitted, Sears will be required to freeze the reduction in retiree life insurance for those class members who submitted claim forms for one year and for part of a second. These skipped reductions have a present value of $28 million, or about nine percent of the present value of the full relief that the plaintiffs sought. Even taking into account the value of the incentive payments to the named plaintiffs and the gift cards to the beneficiaries of deceased class members, the plaintiffs' attorneys are still below the ten percent benchmark the Seventh Circuit has set for denying fees altogether.

In light of the previous rulings in the case, the relief that Sears is giving certainly justifies approval of the settlement. This is especially true because, in the absence of a settlement, the members of the class likely would obtain no relief, and any relief they might obtain would come only after further proceedings sometime in the indefinite future. But "however significant" the relief set forth in the settlement is considered, it is severely "limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.

The plaintiffs' attorneys contend, however, that in valuing the settlement, the Court should take into account Sears' promise, in the Stipulation of Settlement, not to reduce the retiree life insurance benefit below $5,000, and not to accelerate the current reduction schedule. Pl. Br. at 8. According to Mr. Feinstein, the plaintiffs' actuary, this promise has a present value (as of January 1, 2001) of $204 million, see Feinstein Aff., Pl. Ex. B, at 9, 11; the plaintiffs' attorneys contend that this amount should be considered part of the benefit that they created for their clients. Id. at 10.

Sears' promise not to reduce life insurance below $5,000 is too speculative a benefit to be considered here. First of all, as is apparent from the attachment to Mr. Feinstein's declaration, see Ex. F,[6] his valuation of Sears' promise essentially assumes that Sears reduced retiree life insurance to zero as of January 1, 2001. Sears of course did not make such a reduction, either on January 1, 2001 or at any other time before the case settled on June 5, 2001, and Sears was not considering making any further reductions to retiree life insurance benefits at any time before the settlement. Lee Decl. ¶¶ 6-7. Moreover, at the preliminary approval hearing, one of the plaintiffs' attorneys acknowledged that "[w]hether [Sears] would have [made further reductions], at this point one can only speculate . . . We will never know because now they cannot." Oct. 10, 2001 Transcript (Ex. H), at 10 (emphasis added). In short, even if the settlement had never been reached, Sears may never have made further reductions, and even if it did, no one can know when those reductions would have been taken, or how big they would have been.

The assurance against such a speculative injury cannot reasonably be considered a benefit that should be taken into account in awarding attorneys' fees. Just as courts will not award compensatory damages for injuries that are too speculative, this Court should not award attorneys' fees, based on the speculative value of Sears' promise not to reduce life insurance below $5,000. See Bowling v. Pfizer, Inc., 922 F. Supp. 1261, 1280-81 (S.D. Ohio 1996) (finding that nominal value of common fund was not potential payment amount of $165 million,

---

[6]    The attachment (Exhibit B) was not included in the copy of Mr. Feinstein's affidavit submitted with the plaintiffs' fee petition, but was included with the copy submitted with their motion in support of preliminary approval. Sears has included the affidavit with its attachments as Exhibit F.

since a portion of this amount might never have to be paid; court awarded attorneys fees of 10% of amounts actually paid into fund).[2] Moreover, Mr. Feinstein's ascribing of <u>any</u> value to this settlement provision – let alone the $204 million figure he has advanced – is sheer conjecture, and cannot reasonably be taken as the estimated value of the benefit. "[T]he 'settlement' amount or common fund must be measured by the actual economic benefit to beneficiaries, not by a bookkeeping entry." <u>Daniel v. Local 705 Int'l. Bhd. of Teamsters</u>, 1988 WL 1437, *3-4 (N.D. Ill. Jan. 4, 1988) (Moran, J.) (Ex. G) (setting the value of fund at $5,000,000, the amount defendant would actually pay, even though the "theoretical measurement" of "possible claims" was approximately $20,000,000).

Here, too, the settlement must be measured by the actual benefit to the class – that is, the value of the skipped reductions in life insurance, the gift cards to the beneficiaries of deceased class members, and the incentive payments to the named plaintiffs. These benefits, as already noted, have a value of less than ten percent of the benefits the plaintiffs originally sought. As a result, the $1.00 in fees and costs established as a minimum in the parties' settlement is "a reasonable fee under the circumstances of the case." <u>Farrar</u>, 506 U.S. at 115.

**B.     Attorneys' Fees Cases Under ERISA Support An Award Of Nominal Fees.**

Caselaw under ERISA supports the same result. In <u>Hooper v. Demco, Inc.</u>, 37 F.3d 287 (7th Cir. 1994), the Seventh Circuit established a two-step analysis to determine if an ERISA

---

[2]     Cf. <u>United States v. All Assets & Equipment of West Side Bldg. Corp.</u>, 188 F.3d 440, 445-46 (7th Cir. 1999) (claimants were not entitled to damages for the loss of the use of and right to control their property since, even though they technically lost the ability to do things such as form new contracts concerning the property, they presented no evidence of a desire to do such things and thus the court held that "[t]his argument is far too speculative to form a proper basis for an award of compensatory damages").

plaintiff has prevailed where a case has settled. "[A] party must initially prove that the outcome of the plaintiff's lawsuit must be causally linked to the achievement of the relief obtained. . . . 'the lawsuit must [be] a "catalyst" or "material factor" in obtaining concessions from the opponent and a favorable outcome to the dispute.'" Hooper, 37 F.3d at 292 (quoting Nanetti v. University of Ill., 867 F.2d 990, 993 (7th Cir. 1989)). Second, "the suit must have prompted the defendant (settling party) to act or cease its behavior based on the strength of the case, not 'wholly gratuitously' in response to the plaintiff's claims. . . . [W]e must determine whether [the defendant] settled this case with an eye towards its possible exposure if litigation progressed, or whether their motivation to settle was 'wholly gratuitous.'" Id. at 293. Even if the plaintiff can be considered a prevailing party under this two-step analysis, attorneys' fees will still not be awarded if the settling party's position was "substantially justified and taken in good faith." Id. at 294.

Here, as explained above, the lawsuit filed by the plaintiffs' attorneys was not a "material factor" in the settlement that was reached. Rather, the settlement was brought about by the actions of NARSE and other retiree leaders, and so the plaintiffs cannot satisfy even the first step of the Hooper test. But even if the first step had been satisfied, it is clear that the lawsuit did not "prompt[ ] [Sears] to act or cease its behavior based on the strength of the case." Id. at 293. The plaintiffs' attorneys lost the only claims that were brought on a class basis, and twice failed to convince the Court that the remaining estoppel and fiduciary duty claims should be certified for class treatment. In addition, Sears had filed a strong motion for summary judgment against all of the claims brought by the first group of twelve plaintiffs. Just as importantly, a judgment against Sears on any — or even all – of the estoppel and fiduciary duty claims brought by those twelve

plaintiffs would not have meant that any other plaintiff or class member would have been prevailed; as the Court recognized in its two previous rulings denying class certification, "Sears' statements regarding retirement life insurance benefits . . . differed from region to region, time to time, retirement seminar to retirement seminar, and individual inquiry to individual inquiry." In re Sears Retiree Group Life Ins. Litig., 198 F.R.D. 487, 493 (N.D. Ill. 2000).[8/]

Sears did not settle the case because it feared that it might lose, sometime in the indefinite future, some of the individual claims that the named plaintiffs had brought, or that other retirees might bring. Rather, it settled the case in an effort to heal the rift that had developed between Sears and its retirees. See Lee Decl., Ex. C, ¶¶ 4-5; p. 5 supra. As a result, the plaintiffs fail both the first and second parts of the Hooper test, and cannot be considered prevailing parties for the purpose of awarding fees.

Yet even if the plaintiffs were "prevailing parties," Sears would still not be on the line for attorneys' fees, because its position was "substantially justified and taken in good faith." Hooper, 37 F.3d at 294. As already noted, the Court previously found that Sears unambiguously

---

[8/] The plaintiffs' attorneys' assertion that a ruling against Sears in the trial of the first twelve plaintiffs would have led to "tens of thousands of interventions" (Pl. Br. at 6) is specious. As explained in the text, each such intervenor would have had to prove his or her own case, and could not have relied on a ruling against Sears in another case. Moreover, the claims are relatively small. As one of the plaintiffs' attorneys acknowledged at the hearing on preliminary approval, the average reduction was in the range of $14,000-$17,000 retiree (Oct. 10, 2001 Transcript, Ex. H, at 8), and that reduction was over ten years, so the present value would be even smaller. Under the circumstances, few retirees would have gone to the trouble and expense of pursuing their own claims; the fact that many retirees merely signed, dated, and returned the simple Claim Form does not suggest otherwise. And even if there were retirees who wanted to pursue their own claims, where would they have found attorneys, in light of the Court's previous rulings in favor of Sears, and its finding that Sears unambiguously "reserved its right to change or terminate benefits, including retiree life insurance, in both the Policy and the SPD"? In re Sears Retiree Group Life Ins. Litig., 90 F. Supp. 2d 940, 946-47 (N.D. Ill. 1999).

8921447.2

13

"reserved its right to change or terminate benefits, including retiree life insurance, in both the Policy and the SPD [Summary Plan Description]," and therefore held that there was no basis under the terms of the Plan for the relief that the plaintiffs sought in Counts I and II. In re Sears Retiree Group Life Ins. Litig., 90 F. Supp. 2d 940, 946-47 (N.D. Ill. 1999). Moreover, the unambiguous reservations of right would have made any reliance on supposedly misleading communications from Sears unreasonable as a matter of law, and therefore defeated the plaintiffs' estoppel claims. See Vallone v. CNA Financial Corp., 128 F. Supp. 2d 1131, 1138-39 (N.D. Ill. 2000) (Moran, J.) (citing Frahm v. Equitable Life Assur. Soc., 137 F.3d 955, 961 (7th Cir. 1998)). Similarly, the unambiguous reservations are irreconcilable with the sort of "campaign of disinformation" required to sustain a breach of fiduciary duty claim under ERISA. Frahm, 137 F.3d at 958-59 (discussing Varity Corp. v. Howe, 516 U.S. 489 (1996)).

The Seventh Circuit has concluded that a defendant's position may still be substantially justified for these purposes even if arbitrary and capricious. See Quinn v. Blue Cross & Blue Shield Ass'n, 161 F.3d 472, 479 (7th Cir. 1998) ("while [the defendant's] determination may have been arbitrary and capricious, it does not necessarily follow that it was wholly unjustified or made in bad faith"). Sears' position was far from arbitrary and capricious. For this reason, too, the plaintiffs' attorneys should be awarded the $1.00 in fees and costs established as a minimum in the Stipulation of Settlement.[2]

---

[2]    The decision in Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560 (7th Cir. 1994), which the plaintiffs cite, does not suggest a different result. The Florin Court held that common fund principles may be applied in a case brought under ERISA, notwithstanding ERISA's fee shifting provision, if the case is settled with the creation of a common fund. Florin, 34 F.3d at 563. However, nothing in Florin suggests that the degree of success on the merits or the extent to which the strength of the case motivated the defendants to settle should be disregarded in setting fees.

8921447.2

## II.     ANY FEE AWARD SHOULD BE BASED ON THE PLAINTIFFS' LODESTAR.

Even if the Court were inclined to award anything more than $1.00 in fees – and as explained in the previous section, it should not – the award should be based on the lodestar method, not on the percentage method championed by the plaintiffs' attorneys. "[T]he decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." Florin, 34 F.3d at 566. See also Cook v. Niedert, 142 F.3d 1004, 1010 (7th Cir. 1998) (same).

In selecting between the lodestar and the percentage methods, as in setting a reasonable fee generally, the District Courts are to use a "market mimicking" approach, whose "object is to set [the fee award] at a level that will approximate what the market would set." Gaskill v. Gordon, 160 F.3d 361, 363 (7th Cir. 1998). "[T]he purpose of a fee award is to reimburse the plaintiff for the cost he would reasonably incur if he purchased legal assistance in the market . . . . The idea is to 'estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers.'" People Who Care v. Rockford Bd. of Educ., 272 F.3d 936, 938 (7th Cir. 2001) (quoting In re Synthroid Marketing Litig., 264 F.3d 712, 718 (7th Cir. 2001)). That means that although Sears will be paying the fees rather than the members of the class, the Court should determine what a reasonable class member would have agreed to pay, at the outset of the litigation, see Synthroid Marketing Litig., 264 F.3d at 719, for the legal services provided here.

In applying this market approach, the Court has to take into account the background rules that would have shaped or limited the choices the parties to the hypothetical contract could have made. The most important of these background rules is the fee-shifting provision found in

section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), which authorizes the Court to "allow a reasonable attorney's fee" to be paid by the non-prevailing party, usually the defendant, see Florin, 34 F.3d at 563; under such fee-shifting statutes, there is "a strong presumption that the lodestar represents the reasonable fee." City of Burlington v. Dague, 505 U.S. 557, 562 (1992) (internal quotation marks omitted). See also id. ("The 'lodestar' figure has, as its name suggest, become the guiding light of our fee-shifting jurisprudence.").

The fee shifting provision in ERISA makes it unlikely that any reasonable class member in this case would have agreed to a contract that had fees coming from his or her recovery if fees could instead have been recovered from the defendant. Indeed, the agreements submitted by the law firms of Meites, Mulder, Burger & Mollica, Siegel, Brill, Greupner, Duffy & Foster, and the Law Offices of Peter Wasylyk, who together represent the largest number of named plaintiffs and claim to have been retained by over 650 class members, see Pl. Br. at 14-15, specifically provide that the plaintiffs' attorneys would seek an award of fees from Sears, and if successful, "all the attorneys' fees shall be paid from the award" from Sears. See, e.g., Pl. Ex. K, Agreement With Miles Williams. Similarly, at the hearing on preliminary approval, one of the plaintiffs' attorneys admitted that "going into this case, counsel was repeatedly told that one of the fundamental pieces of this had to be that Sears would ultimately pay whatever costs and attorneys' fees were involved." Oct. 10, 2001 Transcript (Ex. H) at 15. If this case had proceeded to a final judicial resolution, the only way the class members and their attorneys might have been able to receive fees from Sears would have been pursuant to section 502(g)(1), and section 502(g)(1) would have created a "strong presumption" that fees should be awarded pursuant to the lodestar method. Accordingly, if the Court does not accept Sears' contention that

the plaintiffs' attorneys should receive only the $1.00 minimum set forth in the Stipulation of Settlement, it should apply the lodestar here.

The plaintiffs' attorneys, however, point to the agreements they entered into with named plaintiffs and members of the class, which, in some instances, state that the attorneys will be entitled to recover one-third of any "money damages" as a fee. See Pl. Ex. K, Agreement With Miles Williams.[10] Relying on the decision in Synthroid Marketing Litigation, the plaintiffs' attorneys assert that this is the best guide to what the market would provide. Pl. Br. at 14-15. However, as already noted, those agreements called for the plaintiffs' attorneys to seek their fees from an award from Sears, and an award from Sears would have been calculated on a lodestar basis. Moreover, the plaintiffs here, unlike the insurers whose contracts were considered in Synthroid Marketing Litigation, are not "sophisticated purchasers of legal services" whose contracts "define[d] the market." 264 F.3d at 720. On the contrary, the contracts here appear to be mostly form contracts, with the name of the class member sometimes written in by hand. See Pl. Ex. K.

Just as importantly, an agreement to have fees calculated on a percentage basis does not make any economic sense, from the perspective of either the class members or their attorneys. As explained above, it does not make sense from the class members' perspective to agree to a contract that awards fees from the class members' recovery if they could instead have been recovered from Sears under section 502(g) on a lodestar basis. But such agreements do not

---

[10]     Some of the agreements merely provide that the attorneys will ask the Court to award them a fee, and then state that fees "are usually in the range of 25% to 30% of the recovery." See, e.g., Pl. Ex. K, Agreement With Paul Derr. Such agreements, which leave the setting of fees up to the Court, have little if any bearing on what method of calculating fees a reasonable class member would have accepted.

make economic sense from the attorneys' perspective, either, because of the nature of this case, and because of another background rule affecting the hypothetical contract the Court has to construct here. The plaintiffs sought the restoration of life insurance benefits that Sears had reduced. But even if the plaintiffs' attorneys had won a complete victory, Sears would not have needed to pay the restored benefits until a class member died. That means that if the agreements with the plaintiffs governed, the plaintiffs' attorneys would not be able to recover fees until their clients died. See Restatement of the Law Governing Lawyers ¶ 35(2) (2000) (absent a contrary contractual provision, a lawyer "is entitled to receive [a] specified [contingent] fee <u>only when and to the extent the client receives payment</u>") (emphasis added). See also id. ¶35 Illus. 4 (in structured settlement, absent contrary provision in contingency fee agreement, attorney gets paid his percentage if and when each settlement payment is made); 1 G. Hazard & W. Hodes, <u>The Law of Lawyering</u>, § 8.12 at 8-28 (3d ed. 2001). Thus, to the extent the retention agreements here could be read to require use of a percentage method, they should be disregarded.

Moreover, the Seventh Circuit has emphasized that the lodestar method "provides greater accountability" by requiring "an explicit accounting of hours and rates." <u>Harman v. Lyphomed, Inc.</u>, 945 F.2d 969, 974 (7th Cir. 1991); see also <u>Florin</u>, 34 F.3d at 565-66 (following <u>Harman</u>). In addition, the percentage method sometimes "result[s] in over-compensation for attorneys." <u>Harman</u>, 945 F.2d at 974; see also <u>Cook v. Niedert</u>, 142 F.3d 1004, 1012 (7th Cir. 1998) (affirming trial court's rejection of the percentage-of-fund approach when based on a concern to prevent excessive compensation). That factor is important here, given the plaintiffs' marked lack

of success. For these reasons, too, if the Court awards anything more than $1.00, it should apply the lodestar method.[1]

## III. THE PLAINTIFFS' LODESTAR SHOULD BE SUBSTANTIALLY REDUCED FOR THEIR LACK OF SUCCESS.

As explained in section I, it is Sears' position that given the plaintiffs' lack of success on the merits, the Court should only award the $1.00 minimum set forth in the Stipulation of Settlement. Yet even if the Court believes that the plaintiffs' attorneys are entitled to some fees, those fees should be substantially reduced.

"[T]he focus in arriving at the appropriate fee award should be on 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" Spanish Action Committee v. City of Chicago, 811 F.2d 1129, 1133 (7th Cir. 1987) (quoting Hensley, 461 U.S. at 435).

> Where the plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount – the product of the number of attorney's hours reasonably expended on the litigation as a

---

[1]    If Sears' promise not to reduce retiree life insurance benefits were to be taken into account in valuing the settlement – and, as demonstrated above, it should not be – then the lodestar method is mandated, because of the uncertain value of that promise. See Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 245-46 (8th Cir. 1996) (in settlement that included injunctive relief changing defendants' future mortgage servicing practices, which plaintiffs maintained was "the real heart of the settlements," decision to apply the lodestar method was not an abuse of discretion where "value of the settlements remained too speculative to calculate an appropriate percentage of the benefit"); Petruzzi's, Inc. v. Darling-Delaware Co., 983 F. Supp. 595, 605 (M.D. Pa. 1997) (in settlement where defendants agreed to pay all claims submitted by class but no limit or amount was set as to how much defendants would pay, the court, after noting that "'some reasonable assessment of the settlement's value' must be made" and that "[s]ettlements of the type involved in this case are rarely ascribed value that is equivalent to the face value of potential claims", applied the lodestar approach in setting attorneys fees in part because "the [common fund] benefit is not reasonably calculable"); In re Metropolitan Derivative Litig., 935 F. Supp. 286, 295 (S.D.N.Y. 1996) (court applied lodestar because of difficulty of setting value of common fund).

whole times a reasonable hourly rate – is likely to be excessive. The Supreme
Court therefore provided: "A reduced fee award is appropriate if the relief,
however significant, is limited in comparison to the scope of the litigation as a
whole." . . . [A] district court may attempt to identify specific hours that should be
eliminated, or it may simply reduce the award across the board to account for the
limited success.

Id. at 1133 (quoting Hensley, 461 U.S. at 440). See also Bryant v. City of Chicago, 200 F.3d

1092, 1101 (7th Cir. 2000) (following Spanish Action Committee); Cooke v. Stefani Mgmt.

Serv. Inc., 250 F.3d 564, 570 (7th Cir. 2001) (upholding fifty percent reduction in plaintiff's

lodestar for lack of success); Connolly v. National School Bus Serv., Inc., 177 F.3d 593, 597-98

(7th Cir. 1999) (same).

Here, Sears prevailed on the class claims for "plan enforcement" and "bilateral contract,"

and defeated the plaintiffs' two attempts to have the fiduciary duty and estoppel claims certified

for class treatment. Accordingly, Sears originally attempted to segregate the time the plaintiffs'

attorneys spent on briefing these motions, since that time did not advance the class members'

cause.[12] However, the plaintiffs' attorneys have attempted to show that some of the entries

really relate to other work on the case, or that part of the time in a particular entry was not spent

on briefing.

It is true that some of the entries are less clear than is desirable, and it may be difficult to

determine whether the time in particular entries was actually spent on briefing. Accordingly,

_____

[12]    The time entries relating to the unsuccessful briefing that Sears was able to identify are
marked with the number "2" in Exhibits 1-22, which are copies of the plaintiffs' attorneys'
billing records. See also n. 1 supra. Sears is also submitting a chart showing the total number of
hours that it is challenging under each category as Exhibit I. That chart shows that there were
2,370.41 hours spent on the plaintiffs' unsuccessful briefing, for a total of $715,240.50 in fees
that could be deducted from the plaintiffs' lodestar. In making this determination, Sears did not
deduct for any time spent on discovery, because discovery generally went to the case as a whole,
and not to any particular claim.

Sears believes that it is appropriate for the Court to "reduce the award across the board to account for the limited success." Spanish Action Committee, 811 F.2d at 1133. Given their unsuccessful briefing and the limited relief that the plaintiffs' attorneys obtained, compared to what they originally sought, Sears submits that this Court should reduce the plaintiffs' attorneys' lodestar, after the other deductions discussed in the next section, by more than 50% across the board, for a total fee reduction of at least $1,590,524.25.

## IV. OTHER REDUCTIONS TO THE LODESTAR ARE WARRANTED.

The plaintiffs' attorneys' billing records also contain a number of other hours that were not "reasonably expended on the litigation," Hensley, 461 U.S. at 435, or that should be disallowed for other reasons.[13]

### A. Schiffrin & Barroway

Although the law firm of Schiffrin & Barroway seeks $82,934.00 in fees and $5,669.03 in costs, it has not produced any of the billing records required under Northern District Rule 54.3. Accordingly, all of the fees and costs that Schiffrin & Barroway requests should be denied, because its failure to comply with this Court's rules makes it impossible to tell whether its time and costs were reasonably expended on this litigation.

### B. Time Spent On Other Cases

The billing records produced by the plaintiffs' attorneys list 102.10 hours spent drafting or reviewing certiorari petitions in Frahm v. Equitable Life Assur. Soc., 137 F.3d 955 (7th Cir.), cert. denied, 525 U.S. 817 (1998), and Sprague v. General Motors Corp., 133 F.3d 388 (6th Cir.)

---

[13] Sears has withdrawn its challenge to the use of the plaintiffs' attorneys' current billing rates to calculate the lodestar.

(en banc), cert. denied, 524 U.S. 923 (1998).[14/] Even if the plaintiffs were entitled to reimbursement for time spent on unsuccessful briefs in this case, they certainly would not be entitled to reimbursement for attorney time spent in Frahm and Sprague, let alone for time spent on unsuccessful briefs in those cases. All of these hours should be disallowed.

### C.    Robert Allison

The Allison firm's billing records indicate that much of its time did not contribute to the briefing and other work done by the plaintiffs' attorneys. As a result, its total of 969.10 hours – which represents 24 full weeks of attorneys time, and which is more than the hours spent by one of the Steering Committee firms – is excessive. This is especially so since the Allison firm, to Sears' knowledge, only represented one of the named plaintiffs. Under the circumstances, Sears believes that 30% of the Allison firm's time should be disallowed.

### D.    Excessive Time Spent On Jones Case

The attorneys for the plaintiffs in the case originally filed as Jones v. Sears Retiree Group Life Insurance Plan, No. 97 C 7742 spent 49 hours preparing the complaint in that case. However, much of the Jones complaint duplicates the complaint filed in George v. Sears Retiree Group Life Insurance Plan, No. 97 C 7453. While Sears recognizes that the attorneys for the Jones plaintiffs had to conduct certain factual investigation relating to their clients' claims, the 49 hours spent on the complaint is excessive. The Court should disallow half of that time or 24.5 hours.

---

[14/]    These hours are marked with the number "2A" on Exhibits 1-22.

**E.     Burke, Williams & Sorenson (f/k/a Thomas, Mort, Prosser & Knudsen)**

The Court should disallow fifty percent of the time claimed, after other deductions, by Burke, Williams & Sorenson (f/k/a Thomas, Mort, Prosser & Knudsen), a total of 243.75 hours. The Burke firm represented Miles Williams and other plaintiffs who originally filed suit in California, but the firm's involvement ended in March, 1998, after the <u>Williams</u> case was transferred from California to the Northern District of Illinois. As a result, the legal analysis, factual research, and strategy development performed by the Burke firm did not benefit the class that was certified in this Court.

**F.     Donald Greenspon And Nexsen Pruet Jacobs Pollard & Robinson**

Mr. Greenspon and the Nexsen Pruet firm are not entitled to any of the fees and costs that they claim. They never filed appearances in this action, and their time records indicate they were representing class members who chose not to become plaintiffs, and therefore were protecting only their interests, not advancing the interest of the class as a whole.

**G.     Inadequate Time Entries**

The billing records produced by the plaintiffs' attorneys include many entries where it is not possible to tell what sort of work was involved, for example, whether it applied to work on the unsuccessful briefing, or whether it applied to work on discovery. Since Sears originally complained about the lack of detail, the plaintiffs' attorneys have provided additional detail for some of their entries; where that has occurred, Sears has withdrawn its challenge. However, there are still a few entries, totaling 25.22 hours and $7,309.25 in fees, for which the entries are still insufficiently detailed.[15] Those entries should be disallowed. See <u>Hensley</u>, 461 U.S. at 433

---

[15]     These hours are marked with the number "5" on Exhibits 1-22.

("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

**H.    Clerical Work Charged At Excessive Rates**

The firm of Susman & Watkins has charged 38.75 hours at the paralegal rate of $80 an hour for clerical tasks such as "copying documents."[16]  Sears does not object to the plaintiffs' charging for this time, but it is inappropriate to be charging at this rate for clerical tasks. Sears has accordingly reduced these entries by half, for a total reduction of $1,550.

\* \* \* \* \*

These items should be deducted from the plaintiffs' lodestar, and then that lodestar, for the reasons explained in section III, should be reduced by at least fifty percent to reflect the plaintiffs' lack of success.  This results in a lodestar of $1,590,524.25.[17]  As demonstrated in the next section, this lodestar should not be enhanced by the application of a multiplier.

**V.    THE COURT SHOULD NOT APPLY A MULTIPLIER HERE.**

In the normal common fund case, a multiplier might well be applied to the attorneys' lodestar amount.  Here, however, such a multiplier is unwarranted, for at least two reasons.

---

[16]    These hours are marked with the number "7" on Exhibits 1-22.

[17]    Exhibit J is a chart showing the hours, fees, and costs that Sears believes might properly be allowed to the plaintiffs' attorneys, if the Court awards more than the nominal amount of $1.00.  The chart reflects deductions for the specific time entries for unsuccessful briefing.  See note 12 supra.  As discussed in section III, Sears believes that it is more appropriate for the Court to take a percentage deduction to reflect the plaintiffs' lack of success than to try to figure out which entries are or are not related to unsuccessful briefing.  Accordingly, Sears added the $715,240.50 for these specific entries it identified for unsuccessful briefing back to the total shown on Exhibit J before making the fifty percent reduction, to come up with the figure of $1,590,524.25 in the text.

First, the Seventh Circuit has recognized that "risk multipliers tend to penalize the parties with the strongest defenses. The stronger the defense, the higher the risk involved in bringing the suit and the greater the multiplier necessary to compensate plaintiff's attorney for bringing the action. Thus, defendants with better cases pay higher plaintiff's attorney fees." Skelton v. General Motors Corp., 860 F.2d 250, 253 (7th Cir. 1988), cert. denied, 493 U.S. 810 (1989). As this Court emphasized at the preliminary approval hearing, the law strongly favored Sears' position in this case. Oct. 10, 2001 Transcript at 22. The plaintiffs' attorneys should not be rewarded, and Sears should not be penalized, because Sears started from a position of strength.

Second, and as a related matter, Sears should not be penalized where it settled, not because of the strength of the plaintiffs' case, but because it wanted to bring disaffected retirees back into the fold. Such a holding could discourage similar settlements in the future, since the enhanced lodestar amount would increase the cost of settlement. Under City of Burlington v. Dague, 505 U.S. 557, 566-67 (1992), a defendant who goes to trial and loses has to pay no more than the lodestar amount. Thus, requiring defendants who settle instead of going to trial to pay an enhanced lodestar would create a disincentive for defendants to settle, especially for defendants like Sears, whose position was strong and had a strong probability of prevailing. Creating disincentives to settlement is not in the parties' or the judicial system's interest, and so the Court should not apply the multiplier the plaintiffs' attorneys request here.

## VI.    ANY PERCENTAGE AWARD SHOULD BE SUBSTANTIALLY REDUCED.

"[W]hether calculated pursuant to the lodestar or percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000). As noted at the outset, "'the most

critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992).

For these reasons, even if the Court is inclined to follow the percentage-of-the-fund approach the plaintiffs' attorneys support, it should take into account their limited success in this litigation, compared to what they originally sought. And that is true even though the agreements the plaintiffs' attorneys have submitted with the petition purport to call for up to a third of the recovery. As the Seventh Circuit has recognized, "there is nothing magical about the percentage [set forth in a fee agreement] when the plaintiff expects the defendants to pay the freight." Kirchoff v. Flynn, 786 F.2d 320, 323 (7th Cir. 1986). Accordingly, Sears submits that if the Court decides to award more than the $1.00 minimum in the Stipulation of Settlement, and if it decides to award on a percentage rather than on a lodestar basis – and Sears believes neither position is correct – the proper percentage to award is no more than five percent, and that the Court should therefore award no more than $1,447,750 in fees.

## CONCLUSION

For all the reasons set forth above, Sears respectfully requests that the Court award the plaintiffs' attorneys only the minimum $1.00 in fees set forth in the Stipulation of Settlement. If the Court believes that some award of fees is necessary, then the award should be based not on a

percentage, but on the plaintiffs' lodestar, unenhanced by any multiplier. Although Sears does not agree that even the lodestar should be awarded, Sears believes that the plaintiffs' attorneys' lodestar should be no more than $1,590,524.25. Finally, if a percentage approach is adopted, then the percentage of fees awarded should be no more than five percent.

Dated: February 15, 2002

Respectfully submitted,

SEARS RETIREE GROUP LIFE INSURANCE PLAN, and SEARS, ROEBUCK AND CO.

By: _____
                    One of Their Attorneys

James D. Holzhauer (ARDC No. 6202746)
Gary A. Isaac (ARDC No. 6192407)
Charles F. Regan, Jr. (ARDC No. 6199007)
Britt M. Miller (ARDC No. 6256398)
Susan B. Nystrom (ARDC No. 6256460)
MAYER, BROWN, ROWE & MAW
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600

## CERTIFICATE OF SERVICE

I, Charles F. Regan, Jr., an attorney, hereby certify that on February 15, 2001, I caused a copy of the foregoing Notice Of Motion and **DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE A BRIEF IN SUPPORT OF ITS RESPONSE TO PLAINTIFFS' PETITION FOR ATTORNEYS' FEES, COSTS AND EXPENSES IN EXCESS OF 15 PAGES** to be served by messenger delivery upon:

> Michael M. Mulder
> Joan H. Burger
> Paul W. Mollica
> Shona B. Glink
> MEITES, MULDER, BURGER & MOLLICA
> 208 South LaSalle Street, Suite 1410
> Chicago, Illinois 60604

Charles F. Regan, Jr.